## WILLIAM C. DURANT & another *vs.* EDWARD N. BURT.

In an action by a broker against his principal for money paid at the defendant's request, evidence that the plaintiff, upon an order to buy stock on time, bargained with a third party for the stock so as to render himself personally liable for the price thereof, and then gave notice of the purchase and the price to the defendant, who " signified his assent thereto ; " and that afterwards, before the end of the time limited in the contract, in reply to the plaintiff's request for an advance of money to himself as a " margin " for security against loss by depreciation of the market price of the stock, the defendant said " that it would be all right ; " is sufficient to warrant a finding that the defendant knew that the plaintiff had rendered himself liable for the contract price, and ratified that arrangement.

A broker bargained for shares in the stock of a corporation, on time, and, with the knowledge and assent of his principal, became himself liable for the price thereof. At the end of the time limited in the contract, he took and paid for the shares, the principal having failed to do so ; and then, after notifying the principal and vainly requesting him to take the shares and demanding repayment, he sold them, the principal at no time repudiating his agency or objecting to his proceedings. *Held*, that he might maintain an action to recover from the principal the difference between the price he paid and the price he realized for the shares, whether or not the party with whom he bargained therefor was at the time of such bargain the owner or assignee of the shares, or authorized by the

Durant & another *v.* Burt.

owner or assignee, or his agent, to sell or transfer the same, and notwithstanding the Gen. Sts. *c.* 105, § 6.

If, at the trial of an action by one stock broker against another in reference to a transaction in stocks, the judge instructs the jury " that the fact that both parties were brokers and might be presumed to know the usages of their business was entitled to great weight," no exception lies thereto on the Gen. *Sts. c.* 115, § 5, which provide that " the courts shall not charge juries with respect to matters of fact, but may state the testimony and the law."

Contract for money paid and work done; with a count on an account stated. At the trial in the superior court, before *Brigham,* J., the facts appeared as follows :

The defendant, who was a stock broker in Boston, but not a member of the Boston Stock Exchange Board, requested the plaintiffs, who also were stock brokers in Boston, to " buy " for him a hundred shares of stock of the Hancock Mining Company, a corporation, " to be delivered at buyer's option within ten days." The plaintiff Durant, being a member of the Board, on August 29, 1866, acting in behalf of the plaintiffs, at a meeting of the Board, " contracted " with one Gilley, also a member thereof, for the stock, the secretary of the Board making, at the time, the following memorandum of the contract, " Aug. 29, 1866. 100 shares of Hancock, Gilley to Durant at $34, buyer 10 days," and Gilley " selling " the stock " on his own account and not as a broker acting for any other person as owner." On the same day or the day following the plaintiffs notified the defendant that they had " bought " a hundred shares of the stock for him on those terms, and he signified his assent. Before the end of the ten days the market price of the stock fell to twenty-four dollars and a half per share ; and the plaintiffs called on the defendant to pay "them " a sum of money, as a " margin," to secure " them " against loss from the decline in the price. He failed to furnish any such " margin," but said it would be " all right." Gilley then, at the plaintiffs' request, " carried " the stock until September 29, when he gave them notice that he should sell it if not paid for ; and, on the same day, the plaintiffs having meanwhile informed the defendant of such notice, he and they had an interview with Gilley, in which the latter stated that he " looked to the plaintiffs " for his pay, and

that he " should sell the stock, if not paid for." But the defendant said that he " could do nothing about it." On that same day Gilley received from Spencer, Vila & Co. (another firm of brokers) a power of attorney signed by them for the transfer of a hundred shares of the stock in question, and delivered it to the plaintiffs, who paid him thirty-four hundred dollars and then gave the defendant notice that they had received and paid for the shares on his account and requested him to take the shares and to reimburse them for their payment. But he never did so, then or afterwards, although repeatedly requested. And finally, on October 3, after giving him notice of their purpose, the plaintiffs sold said one hundred shares of stock for twenty-one hundred dollars and demanded of the defendant payment of the amount of the difference between that sum and thirty-four hundred dollars, with charges for interest and brokerage; and, upon his neglect to comply with the demand, brought this action for such amount.

There was no evidence otherwise than by inference " from the relations of the parties and their previous transactions with each other of a similar description, and the fact of the transaction at the brokers' board, and the fact attending the delivery of the power," as to whether or not either Gilley or Spencer, Vila & Co. were on August 29 or September 29 owners or assignees of any stock in the Hancock Mining Company, or agents to sell and transfer a certificate or other evidence of any shares or interest therein; nor as to " whether or not any shares in said company were ever transferred to Gilley, or to Spencer, Vila & Co., or to the plaintiffs;" nor " that the defendant, up to the time of the sale of said stock by the plaintiffs, knew who was the owner, or whether or not Gilley had, or could give, any valid title to the stock." And, except the memorandum made by the secretary of the brokers' board, which was not signed by anybody, there was no evidence " of any memorandum within the statute of frauds, between said Gilley and the plaintiffs, in the matter of the sale of said stock to the plaintiffs; or that any payment was made by the plaintiffs to Gilley on account of the stock, or delivery of the stock, or any part of it, by Gilley to the plaintiffs on August 29."

The defendant requested the following instructions to the jury:

1. " A sale of shares in a corporation is a contract for the sale of goods within the statute of frauds.

2. " If the jury should find that the plaintiffs entered into any contract with any party in behalf of the defendant for the pur-chase of shares of the corporation to the value of fifty dollars or more, to be delivered at a future day, the plaintiffs cannot re-cover, unless they show affirmatively that they, before the defend-ant refused to take said shares, accepted and received said shares so sold, or some part thereof, or gave something in earnest to bind the bargain, or in part payment, or that they, or some person by them thereunto lawfully authorized, made and signed some memorandum in writing of the bargain.

3. " The burden is on the plaintiffs throughout the case to prove that they paid the money upon a contract made by them for the defendant with some one who was at the time of making the contract the owner or assignee of such stock, or the agent of such to sell or transfer the certificate or other evidence of the shares or interest so contracted for, and that such assignee or agent held the same free from all other contracts to sell.

4. " If the jury find that no evidence has been offered by the plaintiffs to show that they made a contract for the purchase of the stock, in behalf of the defendant, with one who was at that time the owner or assignee of such stock, or the agent of such to sell or transfer the certificate or other evidence of the shares or interest so contracted for, such contract made by them is to be held illegal and void in law.

5. " To entitle the plaintiffs to maintain this action for money paid and services rendered for the defendant, they must show affirmatively that they paid the money upon a legal contract so entered into by them for the defendant's benefit that the law would compel them to perform it; or that they paid the money upon the express request of the defendant, either upon a legal contract, or with the defendant's full knowledge of all the facts which rendered the contract illegal.

6. " If the plaintiffs made an illegal contract on the defend-

ant's behalf, and suffered loss thereby, they cannot recover damages from the defendant upon the ground of his acceptance or ratification of such contract, unless they show that he accepted or ratified it with full knowledge of all the material facts which rendered such contract illegal.

7. " The defendant is not to be presumed to have given the plaintiffs any authority to make an illegal contract for the purchase of this stock ; and, if the plaintiffs made such contract on the defendant's behalf, they must show affirmatively that the defendant gave them authority so to do, or they will be presumed to have acted without authority.

8. " If the defendant is liable at all in this action, the measure of damages is the difference between the price of the stock on August 29, the alleged day of purchase, and its price ten days afterwards on September 8, the latest agreed day for delivery and the day on which the defendant refused to receive it."

The judge declined to give any of these instructions, and " instructed " the jury " that the fact that both parties were brokers, and might be presumed to know the usages of their business, was entitled to great weight in considering whether the defendant had knowledge of the material facts as to ownership of this stock by Gilley and the purchase of it by the plaintiffs ; " and also gave the following instruction : " that if the jury shall be satisfied that the plaintiffs purchased this stock as they allege, at the request, upon the terms requested, and for the account, of the defendant, notified him that they had done so and the terms, and the defendant assented thereto, afterwards carried the stock, at the defendant's request, until the defendant had notice from the vendor that it must be sold, and then, at the defendant's request, express or implied, took and paid for the stock, they should render a verdict for the amount paid, with interest, less the net proceeds of a sale which was made without any unreasonable delay after the refusal of the defendant."

The jury returned a verdict for the plaintiffs, and assessed damages conformably with this instruction ; and they also returned the following answers to these, among other questions specially submitted for their determination : " Was Gilley on

August 29, 1866, the owner or assignee, or authorized by the owner or assignee, or his agent, to sell or transfer the certificate or other evidence of shares contracted for by the plaintiffs with him on that day?" *Answer,* "Yes." "Did the defendant expressly request the plaintiffs to pay Gilley for this stock?" *Answer,* "He implied it." The defendant alleged exceptions.

*E. H. Abbot,* for the defendant.

*H. W. Paine,* (*T. F. Nutter* with him,) for the plaintiffs.

FOSTER, J. The presiding judge submitted this case to the jury upon one instruction which we regard as plainly correct, and which renders it unnecessary to consider any of the rulings asked for by the defendant. It was as follows:

"That if the jury shall be satisfied that the plaintiffs purchased this stock as they allege, at the request, upon the terms requested, and for the account, of the defendant, notified him that they had so done and the terms, and the defendant assented thereto, afterwards carried the stock, at the defendant's request, until the defendant had notice from the vendor that it must be sold, and then, at the defendant's request, express or implied took and paid for the stock, they should render a verdict for the amount paid, with interest, less the net proceeds of a sale which was made without any unreasonable delay after the refusal of the defendant."

Of course, if the jury found the state of facts assumed in this instruction to exist, they need inquire no further; for the defendant, having requested and sanctioned the proceedings of the plaintiffs, is now bound to reimburse them for money paid at his request and to his use. But it is urged that the evidence did not warrant a verdict for the plaintiff on this ground. It is not all reported; but we find enough to show affirmatively that the instruction above recited was pertinent to the case, and the question properly left to the consideration of the jury. In strictness, the objection that this instruction was not appropriate to the facts should have been made distinctly at the trial, and all the evidence should have been recited in the bill of exceptions but we do not find it necessary to decide the case on this ground.

The evidence tended to show that the plaintiffs made a bargain for the stock, by the defendant's request, and just such an one as he authorized; that the defendant was notified of the fact and of the terms of the purchase, and signified his assent thereto; that, before the ten days' credit expired, the plaintiffs requested the defendant to advance money, called " a margin," to secure *them* against loss by the fall in the market value of the stock, and the defendant said " it would be all right." This showed that he was aware that the plaintiffs had made themselves liable for him on account of the purchase, and expressly ratified that arrangement.

The duty then incumbent upon the defendant was to supply the plaintiffs with money to pay for the stock on the day when its price became payable. This he failed to do, and the seller of the stock, at the request of the plaintiffs, " carried it," that is, obtained a further credit for the payment, until September 29. Then the seller, the plaintiffs, and the defendant, met together, and the latter was informed by the seller that he looked to the plaintiffs for payment, and, if not paid, should sell the stock. To all this the defendant made no objection, but only said " he could do nothing about it," which was not a repudiation of the bargain, but a declaration of inability to fulfil it. On the same day the plaintiffs did pay for the stock, notified the defendant that they had done so, and called upon him for repayment. There is no evidence that at any time he repudiated their agency, or objected to any of their proceedings.

The point chiefly insisted upon is that the bargain made for the stock could not be legally enforced because it was not owned by the party who agreed to deliver it. Gen. Sts. *c.* 105, § 6. But it nowhere appears that the defendant made this objection, or any other, to the contract. His only excuse at the time appears to have been inability to pay. The plaintiffs are not shown to have known that the vendor was not the real owner, at least until the power of attorney to transfer it was delivered to them on September 29. The fact that the stock stood in the name of a third party was by no means conclusive as to the real ownership And the plaintiffs were not bound to refuse to

fulfil the agreement upon such an objection, unless instructed by their principal, the defendant, to do so. The case of *Stebbins* v. *Leowolf*, 3 Cush. 137, decides that a vendor seeking to enforce a contract for the sale of stock must show that he owned it when he made the bargain. But this doctrine has no application to a case like the present, in which an agent has paid money for his principal and seeks reimbursement.

We think the circumstances fully warranted the jury in finding a verdict for the plaintiffs on the ground covered by the instructions of the presiding judge.

It remains to consider the objection made to the instruction that the fact that both parties were brokers, and might be presumed to know the usages of their business, was entitled to great weight. This is claimed to be a charge upon a matter of fact forbidden by the Gen. Sts. *c.* 115, § 5. This provision of law was considered in *Commonwealth* v. *Barry*, 9 Allen, 276, and held to prohibit courts, in charging juries, from expressing an opinion as to the credibility of witnesses. But a judge may " state the testimony ;" and this can hardly be done without calling the attention of the jury to the degree of weight and importance to be attached to particular facts, if they are proved or admitted. To say that certain circumstances deserve to be seriously considered, or are entitled to great weight, is not expressing an opinion as to what facts have been proved, but only instructing the jury with regard to the relative materiality and · importance of different portions of the evidence. To assist and guide the deliberations of the jury by such comments is no infringement upon their province, but often a duty necessary to lead their minds to an enlightened and discriminating consideration of the case. *Exceptions overruled.*