## ARGUED AND DETERMINED·

IN THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS.

---

ALFRED HOPCRAFT *vs.* WILLIAM P. KITTREDGE & another.

Suffolk.   January 10, 11, 1894. — June 23, 1894.

Present: FIELD, C. J., ALLEN, MORTON, & BARKER, JJ.

*Contract in Correspondence — Request for Rulings — Questions for Jury — Approval of Offer — General Objection to Rulings — Instructions on the Facts — Motion for New Trial — Affidavits.*

In an action of contract to recover damages for the refusal to receive and pay for one hundred thousand advertising cards, fifty thousand G. C. and fifty thousand C. B., subject to approval of a sketch and of the first thousand of each, and of which one thousand of each had been sent to the defendant, it appeared that there was much correspondence between the parties, and also conversation and correspondence between the defendant and an agent of the plaintiff. One of the defendant's letters stated that the C. B. were right, but the delay in sending the G. C. was not right, and the defendant asked how long he must wait for the C. B. *Held*, that the judge properly left it to the jury to find upon the correspondence and conversation in connection with the other testimony in the case what the fact was in regard to the defendant having approved or disapproved of the cards, and that he properly refused to rule that there was "no approval of the G. C. one thousand in any of the letters, or of the C. B. one thousand." *Held, also*, that an exception "as to that portion of the charge as to the cards being sent for approval" was too general, and that the attention of the judge should have been called specifically to the particulars in which the defendant was aggrieved.

If a judge instructs the jury fully, clearly, and fairly on the different matters involved in the trial and to which the testimony related, and dwells upon them no more than is necessary properly to discriminate and explain them for the benefit of the jury, it cannot be said that he instructed the jury on the facts.

VOL. 162.                    1

A new trial will not ordinarily be granted on the ground of newly discovered evidence which goes only to impeach the credit of a witness at the trial; and where affidavits are offered for the purpose of showing a conspiracy between the plaintiff and a witness for him to testify falsely, the question of conspiracy is one of fact for the court.

On a motion for a new trial, a paper alleged to be a copy of an affidavit of a witness at the trial, which does not purport to have been signed or sworn to by him, may properly be rejected, and it is within the discretion of the judge to reject an affidavit as filed too late, and to refuse to allow a motion for a new trial to be amended so as to include the affidavit, and his discretion is not reviewable in this court, the circumstances not being fully disclosed.

On a motion for a new trial, an interrogatory to a deponent, as to whether certain statements in an affidavit of a person taken in the case were true, is properly excluded, and requests resting on the interrogatory and the excluded affidavit are rightly refused.

CONTRACT, by the plaintiff, who was a manufacturer of advertising show cards in New York, against the defendants, who were wholesale dealers in cigars in Boston, to recover damages for the refusal to order, receive, and pay for one hundred thousand advertising cards. At the trial in the Superior Court, before *Bond*, J., there was evidence tending to show that the cards were of two kinds, called respectively Golden Cloud and Council Brand, upon each of which there was a sketch or picture, the names of the two brands of cigars, Golden Cloud and Council Brand, and the prices of the cigars, and that the cards were intended to be put in boxes exhibited in retail stores, for the purpose of advertising the brands.

There was evidence tending to show that one Slade, who was the travelling salesman and soliciting agent of the plaintiff, and who had authority to procure orders and sell goods subject to the approval of the plaintiff, on or about May 29, 1888, called upon the defendants in Boston to solicit them to purchase some of the plaintiff's advertising cards. A letter dated May 29, 1888, was thereupon drawn up by Slade, signed by the defendants, and handed to Slade, who forwarded it to the plaintiff. The following are copies of this, and also of a letter dated July 6, 1888, from the defendants to the plaintiff. There was much other correspondence which it is not necessary to set out.

Defendants to plaintiff: " Boston, May 29, 1888. I will take 50 M. each of the Golden Cloud and the Council Brand, reduced in size as per instructions at the following price: $22 and $24 per M. respectively, subject of course to approval of the next

sketch and the first 1 M. of each. Deliveries to be divided as afterwards directed."

"Boston, July 6, 1888. Yours of the 5th inst. received. Council Brand cards all right, but the delay in sending Golden Cloud is not right. Please let us know when they will be sent, and if not very soon, we cannot wait. How long must we wait for Council Brand?"

There was evidence tending to show that, after the receipt by the plaintiff of the order of May 29, he prepared several pencil sketches of the cards, submitted them to the defendants, and that the sketches were approved by the defendants; that thereupon the plaintiff caused dies to be engraved, and proofs of cards were sent to the defendants, and the plaintiff purchased cardboard and cut the same into the required sizes, bevelled and gilded the cards, and printed one thousand of each of said kinds of cards, and delivered the same to the defendants on or before July 9, 1888.

Slade testified that, shortly after the delivery of the two thousand cards, he called on the defendants in Boston and inquired whether or not the two thousand cards were satisfactory, and was informed by one of the defendants that the cards were satisfactory and all right. He further testified that, some time about the last of July, 1888, he again called upon the defendants and requested them to give an order for the rest of the cards; that W. P. Kittredge then stated to him that he, Kittredge, was going out of town for a short time, and upon his return would attend to the matter and give an order for the balance of the cards. Both defendants testified that, on each occasion, W. P. Kittredge told Slade that the two thousand cards would not answer at all, that they were too large, that the trade would not take them, that the cards covered up the cigars in the boxes and were useless, and that he would not approve them; and that they would try to get their customers to use them, and would push the cards with that purpose. Slade also testified that he received no answer, verbal or written, from the defendants to either of his letters to them dated September 17 and November 12, hereafter referred to. W. P. Kittredge also testified that the said letters were verbally answered by him to Slade when he was in Boston shortly after the dates of the letters. It was

admitted that, after the receipt by the defendants of the first two thousand cards, the defendants used some of the cards by placing them in the boxes of cigars which they sent or sold to their customers, and that none of the cards were either returned to the plaintiff or paid for. There was conflicting evidence whether the defendants offered to return the unused portion of the cards. Both defendants testified that such use of the cards was with the knowledge and consent of Slade. There was evidence that the plaintiff was at all times in readiness to manufacture and deliver to the defendants the balance of the one hundred thousand cards.

In the letter of September 17 from Slade, he asked them to give directions to go on as to the C. B. and G. C. cards, and called their attention to the fact that they had expressed themselves as satisfied with the first thousand of each. In that of November 12 he repeated that they had approved the cards and the sample thousand of each.

At the close of the evidence, the defendants asked for the following instructions, among others: " 3. That there is no approval of the cards sufficient to make the defendants liable in the correspondence introduced. 4. That if the jury shall find that the defendants did not approve of the two thousand, in conversation, their verdict must be for the defendants. . . . 6. That there is no approval of the Golden Cloud one thousand in any of the letters, or of Council Brand one thousand."

The judge instructed the jury as follows:

" The plaintiff bases his right to recover upon the order of May 29, 1888, and its acceptance by the plaintiff. . . . It would appear that a sketch had been sent, but was to be changed somewhat, and the agreement to take one hundred thousand cards was to depend upon the approval of the next sketch, and also upon the approval of the first one thousand cards of each kind. It is necessary for the plaintiff to show that on his part he accepted that order for those goods on those terms. It is not necessary that he should show that in so many words he wrote to the defendants, ' I hereby accept the order which I have received from you.' It is enough that he by his act or by his words did accept it, and indicated that acceptance to the defendants. . . . If at the time when this order was given by the

defendants to Slade it was accepted by him as the agent of the plaintiff, and he had authority for that purpose, that is a sufficient acceptance. If the order was received by the plaintiff, and he notified the defendants that he had received it, . . . and then he prepared sketches and sent them in pursuance of the order, and then later prepared an engraved die for printing the cards, then sent on to the defendants what he had done with reference to that, — that was a sufficient notification on the part of the plaintiff to the defendants that he had accepted that order and entered upon the completion of the work that was required of him. . . .

" If you are satisfied with reference to the order and its acceptance, constituting as they do a contract between these parties, there are two things more for the plaintiff to show in this case, and one is that the defendants approved the sketches sent. . . . They were to be approved, and the plaintiff claims that they were sent and approved. . . . It is not necessary that the defendants should have said in so many words, ' We hereby approve of the sketches that you have sent,' in any formal way. Any form of words that would indicate that they were satisfied with the sketches would be sufficient; any conduct on their part brought home to the plaintiff or his agent that they were satisfied with the sketches, is a sufficient approval within the meaning of that contract. Was anything said to Slade by the defendants, or either of them? Is there anything in the letters to the plaintiff from the defendants with reference to these sketches, these designs, showing that they were satisfied with them; or, if not satisfied, that they were subsequently changed so that they expressed their approval of them? If there is anything of that kind, the plaintiff has made out that part of his case; and if, after they had received the sketches or the designs, knowing what they were, they ordered them to go on and make the cards from the sketches, or to make the die first, and have that done, that was an approval of the sketch or the design on the part of the defendants. It is necessary that the plaintiff should satisfy you that there was one other thing done by the defendants, and that is that they approved the one thousand cards of each kind that were printed and sent to them by the plaintiff. If they approved the sketch, they

were also to approve the first one thousand cards of each kind. Under that contract the approval was some act of the defendants. The plaintiff is not bound to prove under that contract that these cards were approved by the trade, and by the customers of the defendants. The approval that the contract calls for is the approval of the defendants, or either of them. . . .

" When they received the cards, they were called upon within a reasonable time to state whether they approved them or not, and if they disapproved them the cards belonged to the plaintiff; they were not the cards of the defendants. What was said with reference to the approval of the sketches is true with reference to this part of the case. . . . It is enough if, by any words or conduct on their part, the defendants signified to the plaintiff or his agent the fact that they were satisfied with these one thousand cards. . . . And inasmuch as it is not necessary that the plaintiff should show that that was done by a formal contract, you may take all the evidence in the case and say whether it satisfies you that at some time after those cards were sent the defendants approved them, — expressed satisfaction with reference to them to the plaintiff or his agent; and if they did, then that is sufficient, so far as that part of the case is concerned.

" You have a right to consider the situation of the parties at the time when these one thousand cards of each kind came. . . . In the first place, a sketch had been sent which was to give some idea of what was to go on to those cards. . . . Later, if a card was sent, although not finished in every respect like the cards that were to be sent, — the first one thousand cards, — yet a card showing the same things printed from the engraved die, showing how the card was to look, putting it on to a piece of cardboard of the size and the shape intended, putting it on in gilt letters, showing too the quality of the cardboard, the character of the figure, — everything that would show what that card was to be when it was finished, — and the defendants saw it, and after seeing it and knowing how the card was to look when the first one thousand were printed and sent on, they ordered the one thousand cards to be printed and sent on, and they came; is there anything after that showing that they accepted the cards or approved them? The testimony on one side and the other is, in

the first place, with reference to a conversation with Slade, as to which the parties differ. In substance Slade says that they expressed themselves satisfied with the cards; and that they deny. If you could determine just what took place there, that possibly might enable you to determine the whole question. If at that time they said to Slade that they were satisfied with the cards, that is an approval and binds them. They could not afterwards take that back because the trade did not like them, or because they approved them when they had better not. . . .

" I should call your attention to the fact that . . . Slade wrote a letter, in which he refers to the fact that they had, when he had seen them, signified their satisfaction.

" His declaration is not of so much consequence as their conduct with reference to his declaration. When a person makes a statement to another, and the statement calls for some reply, and no reply is made, the jury have a right to infer that the party acquiesces in it. You will examine the letter and see whether, in your judgment, that calls for a reply, if it was not true; whether the defendants, if that was all false, were not called upon to do something; and if they did not make any reply, you will consider whether at that time they considered that it was untrue, — whether their silence was not an admission to that effect. It is not a matter that can be said absolutely to constitute an admission, but it is a circumstance for you to consider whether reasonably, as men ordinarily act, they were called upon to make a reply. If the matter was left until they should have an opportunity to see Slade and then talk it over with him, that might explain the want of a reply. If, as matter of fact, they made a reply, you will have the reply before you and say what it is; but I call your attention to that as bearing upon this question of what was said between the defendants and Slade with reference to the approval of these cards.

"Another class of evidence consists of the letters between the parties. And you will determine from them whether they indicate that these defendants were satisfied, — had approved of the one thousand cards. It is not enough that they approved of the sketch and of the first cards that were sent; both are circumstances to be considered with reference to whether or not they did approve of the cards that were sent like the proof

card. You may consider their letters in view of the situation of the parties. . . . I am not aware that there is any such inconsistency or any such uncertainty in the letters as to call for any statement from me with reference to it, — a direct statement that is easily understood needs no explanation from any one. You can understand what it is. Now, reading over these letters, giving them fair consideration, and trying to ascertain what was in the minds of the defendants here with reference to these one thousand cards, you consider and say, Do they show that they were satisfied with the cards at any time? and if they do, you would infer that they had approved them. . . .

"There is another class of evidence to consider, and that is the retention of the cards and the use of them by the defendants. As I have already said, these cards, if not approved by the defendants, were the property of the plaintiff, and while the defendants would not be called upon to return them to the plaintiff, he would have the right to take them away. If they went on and retained them an unreasonable time, — an unreasonable time with reference to the matter they were retained for, and that is the approval of the cards, — that is evidence of an approval on their part. As to what would amount to a reasonable time, you should consider the opportunity that they had prior to this time to know just what they were to be, the design, the proof cards; they needed an opportunity to look them over and decide whether they were approved or not.

" As to the use of the cards. It is contended by the plaintiff, and not denied by the defendants, that to some extent the cards were used. As I observed with reference to this contract, the approval was not to be the approval of the trade; it was to be the approval of the defendants. The contract does not provide for such a use of the cards for a sufficient length of time for the defendants to determine whether this was going to be a profitable advertising scheme. That was a matter that they should have considered before they made the contract. The approval of the card was an act of these parties when they saw it, that it was like the design that had been sent, that it was in every way according to the style of card that had been represented to them by the proof that was sent, that the printing was in a workmanlike manner, that the quality of the card was suitable;

and every feature of the card which was subject to examination they had a right to examine and then state whether they were satisfied with it or not.     Then the cards were not theirs, and if they went on and used the cards, saying nothing about them, their retention of these cards, and their use in the boxes of cigars and sending them out, are evidence of an acceptance and an approval on the defendants' part.

"If you are satisfied on the evidence that this plaintiff accepted this order for the one hundred thousand cards, as I have stated, and if he carried out the contract so far as to furnish the sketch, and that was approved, and furnished the one thousand cards of each kind, and those were approved by these defendants, and the plaintiff has been in readiness at all times to fulfil the contract on his part, then he is entitled to recover here on the arrangement he has shown.     If he has not satisfied you of these three things, he is not entitled to recover."

Instructions were also given as to the damages to be recovered.

At the close of the charge the defendants excepted : 1. As to that part of the charge as to the cards being sent for approval.    2. As to that part of the charge as to the letter of Slade; and contended that it did not require a written reply. 3. As to that part of the charge as to the time as it affected the approval, and to the charge as to the use of the cards. 4. That in the charge the judge signified to the jury how he regarded the evidence.

The jury returned a verdict for the plaintiff; and the defendants alleged exceptions.

The defendants moved that the verdict be set aside and a new trial granted on the ground of newly discovered evidence.    The motion set out: 1. that the plaintiff testified falsely; 2. that the judgment was recovered by the conspiracy and false testimony of the plaintiff and his witness, Slade; 3. that subsequently to the delivery by the plaintiff to the defendants of the two thousand cards, the plaintiff testified in another action that he had received an order for only one thousand Council Brand cards from the defendants in this action, by which the plaintiff showed the true meaning of the written order of May 29, 1888; and 4. that the two thousand cards were samples, and their retention did not constitute approval.

The motion further stated that the plaintiff's testimony as to the work done by him in relation to the two thousand cards delivered and the ninety-eight thousand cards to be delivered at a cost to him of one thousand dollars was absolutely false, and that such false testimony in connection with the judge's instructions to the jury thereon must have been that on which they founded their verdict; that the newly discovered evidence was contained in affidavits annexed of various parties named; that the fact that the judgment was recovered by the conspiracy and false testimony of the plaintiff and Slade was also shown by affidavits; and that the third proposition was supported by the affidavit of one Edward H. Fallows and the fourth by the affidavit of one Charles W. Mussotter.

The judge overruled the motion for a new trial, and the defendants alleged exceptions, in substance as follows.

The defendants offered a paper alleged to be a copy of an affidavit of John F. Slade, which stated in substance that he was frequently in the plaintiff's factory during the manufacture of the cards, that he saw about 100,000 small cards, identical with those employed in. the manufacture of the one thousand Council Brand and the one thousand Golden Cloud, and that the cards were bevelled, gilded, and silvered ready to be stamped, etc. No affidavit of which this paper purported to be a copy was ever filed or offered in evidence in the case by either the plaintiff or the defendants, and the paper did not purport to have been signed or sworn to by Slade. The judge ruled that the paper was inadmissible, and excluded it.

The defendants offered for the same purpose affidavits of Albert Sichel, to the effect that Slade admitted to him that he committed perjury at the trial, and of Charles W. Carroll, that he heard Slade's admission to Sichel. The judge ruled that the affidavits were inadmissible, and excluded them.

The defendants also offered for the same purpose the affidavit of Charles W. Mussotter, which was placed on file several weeks after the motion for a new trial, and affidavits in support thereof were filed, but before the hearing on the motion for a new trial. It was not contended by the defendants that this affidavit was in rebuttal of any affidavits or other evidence offered by the plaintiff on the motion for a new trial, but was offered in support of

the motion. The judge declined to entertain the affidavit, on the ground that it was offered too late. The defendants thereupon moved to amend their motion for a new trial by adding thereto the affidavit of Mussotter, which motion was overruled.

The defendants offered the deposition of one Brennan, the eleventh interrogatory of which was as follows: "Have you seen a copy of what purports to be the affidavit of Edward H. Fallows, taken in this case, dated March 21, and sworn to before a notary? If so, please annex a copy to this answer and state whether the . . . statements therein are true, especially the statements as to the answer of Hopcraft to the original complaint, and whether you told him that such answer was lost?" On objection, the judge excluded the interrogatory.

The defendants further offered the affidavits of Sichel, already referred to, and of J. W. Carroll, for the purpose of proving certain statements made by Slade after the trial, and the judge ruled that the affidavits were not admissible for such purpose.

The defendants asked the judge to rule as follows: 1. If the court shall believe that the plaintiff did not use, bevel, or gild the ninety-eight thousand cards, then, under the instructions given at the trial, the verdict must be set aside, because the evidence upon which the jury must have found their verdict was false. 2. If the court believes as aforesaid, the proper instructions to the jury would have been to deduct from the amount of damages the cost of the cardboard for 98,000 cards and the labor for cutting, gilding, and bevelling the same, and the proper amount would have been the loss of profits. The judge declined so to rule.

*A. Hemenway & L. M. Child,* for the defendants.

*E. B. Hale,* for the plaintiff.

MORTON, J. Most of the exceptions that were taken to the refusal of the presiding justice to instruct the jury as requested by the defendants have not been argued by them, and we therefore treat them as waived. Of the others it may be said generally that they dealt with partial views of the testimony, and were properly refused. The third and fourth requests assumed that the defendants were not liable if the correspondence did not contain a sufficient approval by them, or if the jury could not find in the conversation evidence that they had approved the

two thousand cards. But it was for the jury to find, upon all the evidence, whether the defendants had given their approval. The court properly submitted the correspondence to the jury, and left it to them to determine upon it, in connection with all the other testimony in the case, what the fact was in regard to the defendants having approved or disapproved of the cards, and we discover no error in the instructions on this point.

The sixth request for instructions, the only remaining one that has been argued, was to the effect that there was no approval of the Golden Cloud one thousand or of the Council Brand one thousand in any of the letters. In view of the letter of July 6, 1888, we do not see how the request would have corresponded with the fact. Furthermore, the defendants had no right to select a part of the testimony and require the court to rule upon that, to the exclusion of other testimony bearing on the same point. *Commonwealth* v. *Gavin*, 148 Mass. 449, 451. *Neff* v. *Wellesley*, 148 Mass. 487, 495.

The defendants also excepted to some portions of the charge. The first exception which has been argued was " as to that portion of the charge as to the cards being sent for approval." In the first place, the objection is too general. If the defendants were aggrieved by anything which the presiding justice had said or omitted to say regarding the matter of approval, they should have called his attention to it specifically. *Hamilton Woollen Co.* v. *Goodrich*, 6 Allen, 191, 200. *Dwyer* v. *Fuller*, 144 Mass. 420. *Commonwealth* v. *Quinn*, 150 Mass. 401, 405. We think also that the instructions were correct. As nearly as we understand the remaining exception to the charge which the defendants have argued, it is that the court charged upon the facts. We do not think the charge is open to that objection. The court instructed the jury fully and clearly and fairly in regard to the different matters involved in the trial, and to which the testimony related, and dwelt upon them no more than was necessary properly to discriminate and explain them for the benefit of the jury. *Durant* v. *Burt*, 98 Mass. 161, 168.

After the verdict for the plaintiff, the defendants filed a motion for a new trial, which was heard and denied. The case also comes here on exceptions to rulings made by the presiding justice in regard to certain affidavits which were offered by the

defendants at the hearing and rejected by the court, and to its refusal to rule according to two requests presented by the defendants. So far as the affidavits were offered for the purpose of showing that Slade had testified falsely at the trial, they were incompetent. It is settled that a new trial will not ordinarily be granted on the ground of newly discovered evidence which goes only to impeach the credit of a witness at the trial. *Duryee* v. *Dennison,* 5 Johns. 248. *Harrington* v. *Bigelow,* 2 Denio, 109. *Hammond* v. *Wadhams,* 5 Mass. 353. *Commonwealth* v. *Green,* 17 Mass. 515, 525. Hilliard, New Trials, (2d ed.) 505.

Whether the affidavits tended to show conspiracy between the plaintiff and Slade was a question of fact for the justice to pass upon and consider. It cannot be said, as matter of law, that they established it. It is to be further observed that the paper which was alleged to be a copy of an affidavit by Slade did not purport to have been signed or sworn to by him, and might properly have been rejected, because a copy was not under the circumstances admissible. We cannot say that the rejection of the Mussotter affidavit was erroneous. It was excluded by the justice because in his judgment it was offered too late. The circumstances are not stated with sufficient fulness, even if reviewable here, to enable us to determine whether the discretion of the justice was or was not properly exercised. The same is true of the motion by the defendants to amend their motion for a new trial. The interrogatory to Brennan was rightly excluded. Brennan's statements as to the contents of the Fallows affidavit would have been hearsay. Besides, it does not fairly appear what the answer would have been. *Crowley* v. *Appleton,* 148 Mass. 98. The rulings requested by the defendants rested upon the affidavits and the interrogatory to Brennan, and, those having been rightly excluded, there was no basis on which the rulings could rest, and they were therefore properly refused.

*Exceptions overruled.*