JAMES M. CURLEY *vs.* CITY OF BOSTON.

Suffolk. October 10, 1941. — July 15, 1942.

Present: FIELD, C.J., DONAHUE, QUA, & COX, JJ.

*Equity Jurisdiction*, Bill of review. *Equity Pleading and Practice*, Bill of review, Appeal, Waiver. *Waiver*.

An appeal from a decree denying a petition for leave to file a bill of review was waived by failure to argue the appeal by brief or orally.

Statement by FIELD, C.J., of the limitations of the power of a court of equity, on a bill, grounded upon alleged newly discovered evidence, seeking review of a final decree entered after a rescript from this court, and of the discretionary power of the court of equity, acting subject to those limitations, respecting the granting of leave to file the bill of review.

Denial of a petition for leave to file a bill, grounded upon alleged newly
discovered evidence, seeking review of a final decree for the plaintiff
entered in a suit in equity after a rescript from this court, disclosed
no error of law or fact in the exercise by the trial judge of his discre-
tion, where such evidence did not directly controvert the facts which
were determinative of the decision in the original suit but went merely
to impeach the credit of the plaintiff's principal witness and in part
was merely cumulative of evidence at the trial of that suit.

PETITION, filed in the Superior Court on January 29, 1941.
The case was heard by *Fosdick*, J.

*W. P. Murray*, (*C. M. Binnig* with him,) for the petitioner.

*E. F. McClennen*, Special Corporation Counsel, (*H. Freed*,
Assistant Corporation Counsel, with him,) for the respond-
ent.

FIELD, C.J.   This is an appeal by James M. Curley from
a decree of the Superior Court denying a petition filed by
him in that court for leave to file in that court a bill of
review, a copy of which proposed bill of review is attached
to the petition.   The petitioner seeks by the proposed bill
of review to review on the ground of alleged newly dis-
covered evidence a decree of the Superior Court entered
after rescript from the Supreme Judicial Court in a suit in
equity brought by the city of Boston against said James M.
Curley and Joseph Santosuosso as defendants, whereby
the defendant Curley and the defendant Santosuosso were
each ordered to pay a sum of money to the plaintiff in the
suit, the city of Boston.   The decision of this court on the
merits is reported in *Boston* v. *Santosuosso*, 307 Mass. 302.
See *Boston* v. *Santosuosso*, 298 Mass. 175, 302 Mass. 169,
308 Mass. 189, and 308 Mass. 202.   Joseph Santosuosso
also filed in the Superior Court a petition for leave to file a
bill of review.   His petition was denied, and he appealed
and entered his appeal in this court.   But he has not argued
his appeal by brief or orally, and, consequently, his appeal
must be regarded as waived.   *Soscia* v. *Soscia*, 310 Mass.
418, 420, and cases cited.   Therefore, only the appeal of
James M. Curley, herein referred to as the petitioner,
requires consideration.

1. A bill of review in the Superior Court is the proper
remedy to review, on the ground of newly discovered evi-

dence, a final decree entered in that court after rescript from the Supreme Judicial Court. *Boston* v. *Santosuosso*, 308 Mass. 189, 196; 308 Mass. 202, 211. But a "bill of review of a final decree after rescript cannot be filed in the Superior Court as matter of right without leave of that court." *Boston* v. *Santosuosso*, 308 Mass. 189, 198, and cases cited. And the power of the Superior Court to review on a bill of review, on the ground of newly discovered evidence, a final decree after rescript is limited. (a) That court cannot so review matters of law or fact that have been decided by this court. The "theory of a bill of review on newly discovered evidence is that by reason of such newly discovered evidence 'a new case is made out, which this court has never passed upon.' *Gale* v. *Nickerson*, 144 Mass. 415, 418. *Crocker* v. *Crocker*, 198 Mass. 401, 407." *Boston* v. *Santosuosso*, 308 Mass. 189, 198. (b) A "bill of review, by an unsuccessful defendant, ought not to be entertained, unless it affirmatively appears, that he had a good defence on the merits, of which he has been deprived, or that some fraud or wrong has been practised upon him. . . . It must be indispensable to the justice and merits of the case." *Manning* v. *Woodlawn Cemetery Corp.* 249 Mass. 281, 288. (c) Newly discovered evidence that constitutes ground for a bill of review of a final decree must be evidence that the party seeking such review has had no reasonable opportunity to present before the entry of such final decree. *Manning* v. *Woodlawn Cemetery Corp.* 249 Mass. 281, 288. *Boston & Maine Railroad* v. *Greenfield*, 253 Mass. 391, 397. *Long* v. *George*, 296 Mass. 574, 579. *Hyde Park Savings Bank* v. *Davankoskas*, 298 Mass. 421, 423. *Counelis* v. *Andreson*, 299 Mass. 382, 383. *Boston* v. *Santosuosso*, 308 Mass. 189, 196–198. See also *Nicholas* v. *Lewis Furniture Co.* 292 Mass. 500, 505–506. Subject to these limitations, the question whether such leave shall be granted by the Superior Court "is a matter within the discretion of that court, subject, as are other matters of discretion, to review by this court," and the exercise of this discretionary power "may involve not merely an examination of the petition and of the bill of review sought to be filed, but also a con-

sideration of the nature, materiality and credibility of the alleged newly discovered evidence." *Boston* v. *Santosuosso,* 308 Mass. 189, 198, 201.

Upon review by this court on appeal from the exercise of the discretionary power of the Superior Court with respect to granting leave to file a bill of review, weight must be given to the exercise of such discretionary power by that court, and "error of law or fact must be shown by the record on appeal, in order that the discretionary action may be reversed." *Long* v. *George,* 296 Mass. 574, 579. *Boston* v. *Santosuosso,* 307 Mass. 302, 353.

2. The question for decision in this case, therefore, is whether upon the record before us the trial judge committed error of law or fact, in the exercise of his discretionary power, by denying the petition of the petitioner for leave to file the bill of review attached to the petition based on the ground of alleged newly discovered evidence.

3. There is no report of material facts found by the judge in accordance with the provisions of G. L. (Ter. Ed.) c. 214, § 23, nor does it appear that any request was made for such a report. Nor is there any report of the evidence in accordance with established practice. See G. L. (Ter. Ed.) c. 214, § 24; Rule 76 of the Superior Court (1932); *Plumer* v. *Houghton & Dutton Co.* 277 Mass. 209, 215. See also *Mulrey* v. *Carberry,* 204 Mass. 378, 381–382; *Brodrick* v. *O'Connor,* 271 Mass. 240, 242–243. The record, however, contains a certification of the trial judge, in accordance with an agreement of the parties, that "the entire evidence received at the hearing of the petition consisted of the transcript of the evidence in Com. v. Graves and the printed copy of the record in City of Boston v. Santosuosso et al," and a transcript of such evidence and such printed record have been presented to this court in accordance with an agreement of the parties. Since this printed record is a part of the files of this court we might take judicial notice of it even if it were not incorporated in the present record. *Commonwealth* v. *DiStasio,* 298 Mass. 562, 567. *Culhane* v. *Foley,* 305 Mass. 542, 543. While the manner in which the evidence is brought before us is not in accordance with

established practice, and cannot be approved as correct practice, it is not open to the objection pointed out in *Gorey* v. *Guarente,* 303 Mass. 569, 570–571, and we deal with the case, as the parties have done, as an appeal upon a full report of the evidence including a transcript of the evidence in Commonwealth *v.* Graves — an indictment, as the record discloses, of Frederick H. Graves for perjury at the trial of the original suit, upon which the defendant was acquitted.

According to the record in the original suit the petitioner knew before the entry in this court of his appeal from the final decree in the Superior Court first made in that suit that the criminal case against Graves was then on trial, and an extension of time for entry of this appeal was granted on that account. *Boston* v. *Santosuosso,* 302 Mass. 169. And the record on the present petition discloses that the trial of the criminal case was concluded before the appeal from this final decree in the original suit was entered in this court.

4. The argument of the petitioner upon the present petition is, in substance, a reargument of the case already decided, based upon evidence that was previously before this court set forth in "the printed copy of the record in City of Boston *v.* Santosuosso et al," and upon the evidence at the trial of the criminal case of Commonwealth *v.* Graves appearing in the transcript of such evidence. Obviously, the evidence set forth in the printed record in the case of *Boston* v. *Santosuosso* — including the evidence upon motions for new trials, which were denied — is in no aspect "newly discovered evidence." This evidence and the findings made thereon by the trial judge were considered at length in the opinion of this court on the merits in the original suit. 307 Mass. 302, 331–352. The matter there considered was not open to review by the Superior Court on the present petition unless, by reason of newly discovered evidence, "a new case is made out, which this court has never passed upon." The petitioner's case for leave to file a bill of review upon the ground of newly discovered evidence, therefore, necessarily rests upon the evidence at the

trial of the criminal case. Such evidence, however, must be considered in the light of the evidence and findings in the original suit set forth in the printed record thereof and in the decision of this court on the merits of that suit embodied in the opinion reported in 307 Mass. 302.

5. In the consideration of this so called "newly discovered evidence" two matters are involved: (a) the substance of the "newly discovered evidence," and (b) the question whether such evidence was "newly discovered" within the meaning of the law relating to bills of review on the ground of newly discovered evidence. We deal first with the substance of this so called "newly discovered evidence," assuming for this purpose, but without so deciding, that such evidence was "newly discovered" within the meaning of the law relating to bills of review on the ground of newly discovered evidence. Furthermore, we assume in favor of the petitioner, also without deciding, that this evidence would be admissible at the trial of the case upon the bill of review if leave were granted to file such a bill, though it may well be that some of this evidence would not be so admissible.

6. The facts established in the original suit in equity constituting the basis for the final decree after rescript entered in that case are set out in considerable detail in the opinion in *Boston* v. *Santosuosso*, 307 Mass. 302, 310–314, 331–352, and need not be restated in full here. Many of the facts showing the general situation in which the original suit arose were not controverted. These facts are, in outline: That suit arose out of a settlement of certain actions at law brought in the Superior Court against the city of Boston by the General Equipment Corporation as the nominal plaintiff in which Ernest W. Brown, Inc., was the real plaintiff. Joseph Santosuosso, a defendant in the original suit, appeared as counsel for the plaintiff in these actions at law. Frederick H. Graves represented, in Boston, Ernest W. Brown, Inc., and worked with counsel for that corporation and the General Equipment Corporation in the preparation and trial of those cases. These cases were settled by an agreement authorized by the petitioner, then mayor

of the city of Boston, for $85,000. A check of the city for this amount, payable to Santosuosso as attorney, was turned over to him and by him deposited in his checking account. He drew against this account three checks, each payable to Frederick H. Graves, Agent, for the amounts of $15,000, $20,000 and $30,000, respectively. The balance of $20,000 remained in Santosuosso's account, ostensibly, at least, as his fee and reimbursement for his expenditures in the cases. The controversy in the original suit related to the disposition of the proceeds of the check for $30,000.

The ultimate findings of the trial judge in the original suit based upon conflicting evidence, in connection with the uncontroverted facts above stated — sustained by this court on appeal — were, in substance, as follows: The "entire proceeds [of the $30,000 check] were turned over [in currency] to the defendant Curley by the defendant Santosuosso in accordance with the understanding whereby Curley as mayor authorized the settlement to be made." This understanding "among Graves, Santosuosso and Curley" "began in the Hotel Mayflower" in a conversation between Graves and Curley, described in the finding. "As a part of that understanding Graves corruptly promised to Curley a gift or gratuity with intent that it should influence his judgment as mayor in the matter of authorizing the settlement of the General Equipment cases. By reason of that promise Curley corruptly authorized the so called settlement that was carried through and later corruptly accepted the $30,000 when it was corruptly given to him by Santosuosso." *Boston* v. *Santosuosso,* 307 Mass. 302, 310–313. This court in its opinion on the merits in the original suit said, moreover, of the finding of the trial judge that the "entire proceeds [of the $30,000 check] were turned over to the defendant Curley by the defendant Santosuosso" that this finding "necessarily implies that at the time the check was cashed or thereafter the proceeds thereof were received by the defendant Santosuosso". Page 336. But this court said also that the finding that the $30,000 was paid by the defendant Santosuosso to the defendant Curley was "not essential to support the decree against the de-

fendant Curley," since on other findings in the case the decree might be supported either on the ground of a conspiracy in which "both these defendants participated as coconspirators" or on the ground "that the defendant Santosuosso was the ostensible agent of the defendant Curley to receive the $30,000," and that receipt "of this money by the defendant Santosuosso as such agent, was, in legal effect, receipt of such money by the defendant Curley." Pages 351–352. The evidence of Frederick H. Graves at the trial of the original suit was an essential factor in the proof of the facts therein found as herein outlined.

7. It is apparent that the final decree after rescript in the original suit rested ultimately upon the finding that the proceeds of the check for $30,000 were received by Santosuosso when it was cashed and the finding of the trial judge with respect to the conversation between the petitioner and Graves at the Hotel Mayflower in Washington. While the present petition is directed to a review of this final decree, it is, in effect, directed to a review of these findings upon which this decree was based. Unless one or both of these findings are to be reversed by reason of newly discovered evidence, there is no occasion to discuss the propriety of the ultimate conclusion embodied in the decree resting thereon. This subject has already been considered by this court (*Boston* v. *Santosuosso*, 307 Mass. 302, 331–352), and was not open for reconsideration by the Superior Court upon the present petition.

8. The "newly discovered evidence" has been carefully examined with respect to its bearing upon the two basic findings above described. Nothing in this evidence directly negatives either of these findings. It was urged in the original suit as an explanation of the disposition of the proceeds of the check for $30,000 — alternative to the disposition thereof found by the trial judge — that the money was improperly taken by Graves for himself or perhaps for himself and officers of Ernest W. Brown, Inc. It was pointed out, however, in the opinion on the merits in that suit that, apart from the evidence that the money was paid to the defendant Santosuosso, there was "no explanation

of the disposition of the proceeds of the check for $30,000 other than the testimony of the defendant Santosuosso which could have been disbelieved by the trial judge"; that there "was no evidence other than this testimony tending to show the possession by Graves after the settlement of any money other than the $15,000 represented by the $15,000 check"; and that "there was uncontradicted evidence in an answer to an interrogatory by the vice-president of Ernest W. Brown, Inc., [one Montgomery] that the corporation received a certified check for $20,000 and that neither he nor the corporation received any other sums out of the proceeds of the settlement." Page 339. Nothing in the "newly discovered evidence" supplies the lack of evidence here referred to, or contradicts this evidence of Montgomery. Indeed, both he and another officer of Ernest W. Brown, Inc., (one Senn) testified orally at the trial of the criminal case in conformity with this evidence of Montgomery.

The petitioner contends, however, that testimony of these officers of Ernest W. Brown, Inc., at the trial of the criminal case tends to show that the officers of Ernest W. Brown, Inc., did not know of or participate in any arrangement for the settlement of the General Equipment Corporation cases through bribery of the petitioner, and that this testimony tends to negative the findings to the effect that the settlement was brought about by such an arrangement to which Graves, a representative of Ernest W. Brown, Inc., was a party. No specific finding was made in the original suit with respect to knowledge of or participation in such an arrangement by officers of Ernest W. Brown, Inc., except as such a finding may be implied from the finding that Graves's "instructions from his principal were that if the case were settled the principal was to get net $35,000. He was not told by his principal that he was authorized to settle for $20,000. Nevertheless, although he only paid that sum to his principal, it does not appear that the latter was dissatisfied." At the trial of the original suit Graves had testified that he had not "arranged with the officers of the Ernest W. Brown Company to solicit

the making of a bribe to Mayor Curley before going to Washington," but that he had talked with Montgomery or Senn "with reference to that feature," that they knew that "some money would have to be paid to put this thing over," that they "knew" of the plan and "never disapproved of it." At the trial of the criminal case, however, Montgomery testified that he never had "any conversation with Mr. Graves with reference to bribing any officers of the City of Boston" and that at no time had he "forwarded any money over to Mr. Graves, to be used for the purposes of a bribe." And Senn testified that Graves never told him that "money would have to be paid to city officials of Boston, to decide this case." Moreover, at the trial of the criminal case there was testimony by Montgomery and Senn, one or both of them, that, when Graves reported the amount of the settlement and the disposition of the proceeds thereof, objection was made to him with respect to the small amount ($20,000) turned over to Ernest W. Brown, Inc., to the amount ($15,000) taken by Graves, and to the amount ($20,000) retained by Santosuosso. With respect to the remainder of the $85,000 for which the General Equipment Corporation cases were settled, Montgomery, however, testified that he asked Graves what happened to the rest of the money ($30,000); that Graves replied that Santosuosso "had large payments to make out of that," and, when asked what payments, replied, "You better draw your own conclusions," and Graves testified that he told Montgomery that there was "$30,000 that was paid to the Mayor," the petitioner. But there was no evidence that the matter was followed up further by any officer of the corporation apart from a general inquiry by Montgomery, of Graves, several years later, about his adjusting the account relating to the General Equipment Corporation cases.

The above recital sets forth in summary form the substance of the evidence at the trial of the criminal case, not introduced at the trial of the original suit, that might be thought to have a bearing upon the merits of the latter suit other than by way of impeaching the credibility of the

evidence of Graves. But even the evidence so summarily stated, so far as it may tend to show that the officers of Ernest W. Brown, Inc., did not know of or participate in an arrangement for obtaining a settlement of the General Equipment Corporation cases by bribery of the petitioner, bears primarily, if not exclusively, upon the credibility of the evidence of Graves supporting the findings to the effect that the settlement of the General Equipment Corporation cases was obtained by such an arrangement. Proof that the officers of Ernest W. Brown, Inc., knew of or participated in such an arrangement was not an essential element of proof that the settlement actually was obtained by such an arrangement to which Graves, a representative of Ernest W. Brown, Inc., was a party.

Clearly the trial judge, in the exercise of his discretionary power with respect to granting leave to file a bill of review, was not required to conclude that the testimony at the trial of the criminal case here summarily stated had such a material bearing directly upon the merits of the case previously passed upon by the Supreme Judicial Court that leave to file a bill of review on the ground of this testimony should be granted. Nor was there anything else in the "newly discovered evidence" bearing directly upon the merits of the case previously decided that was of such materiality with respect thereto as to require the trial judge in the exercise of his discretion to grant such leave.

9. The evidence at the trial of the criminal case not already referred to, so far as it has any bearing upon the original suit, bears upon the credibility of the evidence of Graves as disclosed by his conduct and by the circumstances attending the securing and presentation of his evidence in that suit. The petitioner argues that this evidence at the trial of the criminal case has a broader application as tending to show that Graves was a person who not only would testify falsely, but also would take money wrongfully and fabricate evidence to conceal such wrongful taking. But even in this aspect the bearing of this evidence in the criminal case is, at most, upon the credibility of the evidence of Graves in the original suit.

The principles governing the granting of leave to file a bill of review on the ground of newly discovered evidence are closely similar to the principles governing the granting of a motion for a new trial on the ground of newly discovered evidence in an action at law. At least the principles applicable to a petition for leave to file a bill of review are not more favorable to the petitioner, since he is here seeking review of a final decision and not merely, as in the case of a motion for a new trial, further action previous to final decision. With respect to such a motion the principles are well settled that (a) a "new trial ordinarily will not be granted upon the discovery of evidence which is cumulative and in most such cases will and ought to be denied," *Berggren* v. *Mutual Life Ins. Co.* 231 Mass. 173, 177, and cases cited; *Davis* v. *Boston Elevated Railway*, 235 Mass. 482, 495; and (b) a "new trial will not ordinarily be granted on the ground of newly discovered evidence which goes only to impeach the credit of a witness at the trial," *Hopcraft* v. *Kittredge*, 162 Mass. 1, 13; *Barrett* v. *O'Connell*, 295 Mass. 515, 516; *Graustein, petitioner*, 305 Mass. 571, 572, and this is particularly true where his credibility had been the subject of controversy at the original trial. See *Hammond* v. *Wadhams*, 5 Mass. 353, 354. An even stricter rule as applied to review of a final decree in some circumstances was laid down in the case of *Zeitlin* v. *Zeitlin*, 202 Mass. 205, 207, and cases following it. Whether this stricter rule is applicable to the present case need not be considered since the principles above outlined are sufficient for the decision of the present case.

Attached to the bill of complaint in the original suit was an affidavit by Graves, dated January, 1937, to the facts upon which the suit was based. At the trial of this suit a deposition of Graves taken upon written interrogatories affirming the truth of the statements in the affidavit was introduced by the plaintiff, the city of Boston — with the exception of certain parts thereof not admitted against the present petitioner. Graves, however, at the trial, was called as a witness in rebuttal by the plaintiff, and his testimony was admitted subject to certain limitations. He

was cross-examined at length by counsel for the petitioner and by counsel for Santosuosso. The credibility of the evidence of Graves was the subject of controversy at the trial of the original suit. The trial judge in his findings stated "His [Graves's] testimony, if true, makes him out a co-conspirator. Before me he admitted having perjured himself before the finance commission in matters vitally material to this case. For both these reasons I have subjected his testimony before me to extremely critical scrutiny." After such scrutiny he made the findings upon which the decree adverse to the petitioner was based. *Boston* v. *Santosuosso*, 307 Mass. 302, 344–345. And this court in its opinion on the merits of the original suit made a detailed analysis of the evidence in that suit and the findings made thereon by the trial judge, and stated that the "evidence tending to discredit this witness [Graves] bore upon the weight to be given his evidence, but did not necessarily render it unworthy of belief" (page 344), and that the court could not say "that Graves was so untrustworthy a witness or his evidence of a corrupt arrangement . . . so highly improbable as to render his evidence in general unworthy of belief." Page 339.

Much of the evidence relied on by the petitioner to impeach the credibility of the evidence of Graves at the trial of the original suit was before the trial judge at that trial and before this court on appeal from the decree then made. This court in its opinion upon this appeal said: "There are some discrepancies between his [Graves's] documentary evidence and his oral testimony. There was evidence of inconsistent statements with respect to the cases in question made by him in testifying at a hearing before the finance commission of the city of Boston. This witness, testifying in the present case, admitted that testimony given by him at the hearing referred to was knowingly false. And the witness admitted on cross-examination that he had rendered a false return of disbursements for expenses to Ernest W. Brown, Inc." Page 344. Such evidence cannot be made the ground of a bill of review.

Moreover, if the manner in which the evidence of Graves

was presented at the trial of the original suit, by his deposition in the plaintiff's case in chief and by his testimony in person in court only in rebuttal, had any tendency to cast doubt upon the credibility of the evidence of Graves, this situation was before the trial judge for his consideration in making his findings in the original suit. Though the manner of presentation limited the scope of examination of the witness by the plaintiff, he was subject to full cross-examination by the petitioner and his codefendant, and he was, in fact, subjected to rigorous cross-examination by each of them.

The petitioner urges, however, that the "newly discovered evidence" tends to show that Graves attempted to avoid testifying in person at the trial of the original suit and that such an attempt tends to discredit him as a witness. But there is nothing in the "newly discovered evidence" tending to show that he attempted to avoid testifying in person in court in the manner in which he actually testified, or that the manner in which his evidence was presented was due to reluctance on his part to testify in person in court in the original suit. The "newly discovered evidence" with respect to the desirability of taking a deposition of Graves, apart from slight evidence relative to the taking of his deposition — written answers to interrogatories — that was introduced in evidence in the original suit, related to another case involving the same facts which had been brought by the petitioner against a Boston newspaper but had not been tried, and doubtless had a tendency to show some reluctance on the part of Graves to come to Massachusetts for the purpose of making such a deposition and to show the conclusion of counsel in that case that it would be advisable to have his deposition taken elsewhere. But the bearing of this evidence as tending to impeach the credibility of the evidence of Graves as actually presented at the trial of the original suit is, at most, highly remote.

The petitioner also relies upon evidence at the trial of the criminal case relating to the method by which the evidence of Graves introduced in the original suit was secured by the plaintiff in that suit as tending to impeach its credi-

bility. There was some evidence on the subject of this method at the trial of the original suit. Graves then testified that the affidavit of January, 1937 — the affidavit annexed to the bill of complaint — was made by him in the office of counsel for the plaintiff in the original suit to which he had been taken by a member of a firm that was counsel for a Boston newspaper against which the petitioner had an action pending, and in his testimony referred to a previous affidavit made by him for this member of this firm — hereinafter referred to as counsel for such newspaper. The evidence at the trial of the criminal case upon this subject was, in general, in conformity with the evidence on this subject at the trial of the original suit but in much greater detail. The latter evidence shows without contradiction that counsel for the plaintiff in the original suit had no communication with Graves previous to the time when the affidavit of January, 1937, was made. Such evidence, however, tends to show that the primary source of such counsel's information with respect to Graves's account of the arrangement in pursuance of which the General Equipment Corporation cases were settled was information furnished by Graves to counsel for the Boston newspaper embodied in his previous affidavit.

The petitioner specially relies upon the evidence of the relations between Graves and counsel for the plaintiff in the original suit and counsel for the Boston newspaper, respectively, with respect to payments of money made or directed to be made to Graves in connection with these cases. Graves testified at the trial of the original suit to amounts of money previously received by him in connection with his deposition in that suit and with his coming to Boston to testify therein, and also to the amount paid him in connection with making the affidavit for counsel for the Boston newspaper. The evidence at the trial of the criminal case tends to show that these amounts were somewhat understated, and that in connection with each of these cases Graves received considerable further amounts of money — in connection with the case brought by the city of Boston after he had testified in court at the trial, and in

connection with the case brought against the Boston newspaper after he had made the affidavit for counsel in that case. The evidence at the trial of the criminal case, documentary and oral, tends to show that each of these counsel, with respect to the case in which he was counsel, insisted to Graves that he could be paid only for his loss of time and expenses. But the evidence also tends to show that Graves was insistent in his demands upon counsel for payments of money — demands that were not fully complied with — and in the course of such demands urged the value of his evidence and made statements that, at the trial of the criminal case, he admitted were false. So far as this evidence tends to impeach the credibility of Graves, it is cumulative in nature. See *Parker* v. *Hardy*, 24 Pick. 246, 248. It tends to portray Graves in the same light with respect to his trustworthiness as a witness as that in which he was portrayed by the evidence at the trial of the original suit.

It cannot rightly be said that the trial judge, in the exercise of his discretionary power with respect to granting leave to file a bill of review, committed error of law or fact in concluding, as the denial of the petition implies, that the evidence at the trial of the criminal case, so far as it bore upon the credibility of the evidence of Graves, was not of such an extraordinary nature as to take the case out of the principles already stated that a bill of review ordinarily will not be granted on the ground of newly discovered evidence that is cumulative or that goes only to impeach the credit of a witness at the trial.

10. What is here said covers all the matters urged by the petitioner in support of his petition, even though the evidence relied on is not specifically recited or discussed. The conclusion follows that, considering only the substance of the so called "newly discovered evidence," the trial judge was not required in the exercise of his discretionary power to grant leave to file the proposed bill of review. Clearly he was not required to conclude that a bill of review was "indispensable to the justice and merits of the case." *Manning* v. *Woodlawn Cemetery Corp.* 249 Mass. 281, 288.

11. In view of the conclusion reached on the basis of the substance of the so called "newly discovered evidence," it is unnecessary to consider whether the action of the trial judge could be sustained on the further ground that such evidence was not shown to have been actually "newly dis- covered" within the meaning of the law relating to bills of review, or even whether it would have been permissible for the trial judge to find that such evidence was actually "newly discovered" in that sense.

> *Appeal of the petitioner Santosuosso from the decree denying his petition waived.*
>
> *Decree denying the petition of the petitioner Curley affirmed.*